Nichols, C. J.
On the 6th of August, 1919, the State of Ohio, acting through Hugo N. Schlesinger, Prosecuting Attorney of Franklin county, Ohio, filed its action in the common pleas court of Franklin county, Ohio, against The Columbus Packing Company and The Fairmont Creamery Company.
The Columbus Packing Company is an Ohio corporation engaged in the slaughtering of cattle, swine, sheep and other domestic animals and exposing same for sale as food. The Fairmont Creamery Company is an Ohio corporation licensed to operate under the provisions of Section 7 of the Cold Storage Act of March 21, 1917, 107 Ohio Laws, page 594.
The action is one for injunction, the appointment of a receiver, and other equitable relief. By the provisions of Section 6400, General Code, jurisdiction is conferred on courts of common pleas to enjoin violations of the Valentine Anti-trust Law, Sections 6390 to 6402, General Code, inclusive, and in cases brought therein the court may make all such orders as demanded by the rules, and proceedings in equity. By the terms of the Cold Storage Act it is made unlawful to sell or offer for sale certain food products therein named held in storage for a period longer than six months. By the terms *287 of the Valentine Anti-trust Act it is made unlawful to create or carry out restrictions in trade or commerce. It is further made unlawful to prevent competition in the sale or purchase of a commodity.
It is charged in the petition that the defendant companies in respect to the storage of 150,000 pounds of pork have violated the provisions of both of said laws; that between the 29th of November, 1918, and the 5th of February, 1919, certain whole, carcasses of pork or parts thereof were delivered to the Creamery Company and that such food product remained in storage for a period longer than six months in violation of the express provisions of Section 13 of the Cold Storage Act. It is claimed that the storage of a food commodity for so long a period as to render it unsalable in Ohio by the owner is per se an act in restraint of trade, and that such storage acts as a preventive of competition.
The vital and controlling issue of fact in the case centers around the duration of time the pork in question had remained in cold storage prior to the institution of the suit.
The defendant Creamery Company expressly admits that the goods had been stored in its warehouse for the period of timé set forth in the petition. The defendant Packing Company, after admitting the delivery of certain parts of carcasses of pork to the Creamery Company for storage, denied the allegation as to length of time of storage in this language: “But not being advised as to the exact number of pounds or dates of delivery of *288 each, it denies the allegation concerning the same.” Further along in the answer the Packing Company did, however, admit in substance the allegations in respect to the alleged unlawful storage. Its language in this respect is as follows: “That it has not sold, offered or exposed for sale any of said pork products after the expiration of said six months during which said pork products have been held in said cold storage warehouse.”
It is further alleged in this answer “That it has tried by its officers and agents in every possible way to dispose of the same at a fair market value, but that owing to the quantity of pork loins thus accruing, as hereinbefore described, in the hands of said defendant, it was unable to sell or dispose of the same within the time limit thus mentioned in said act of the General Assembly.”
At the hearing of the case in the court of common pleas, the defendant Packing Company introduced in evidence its answer, and the affidavits of J. D. Reed, A. S. Goddard and J. N. Mathy. These affiants claimed to represent parties that had purchased certain portions of the food in question before the expiration of the six months. Each of these affidavits contained the following statement of fact: “That the frozen, pork loins purchased thereunder were merely left in The Fairmont Creamer}^ Company so as to provide for the care and protection of the same from danger of decay.” It would appear, therefore, that the trial court was amply justified in treating the question as to the length of time of storage as fully established by the admissions of all the parties, including the repre *289 sentatives of the alleged purchasers of part of the property.
The Creamery Company expressly admits it. The representatives of the alleged purchasers admit it, for they say that after they purchased a portion of the property on the 9th of July it continued to remain in the warehouse. The Packing Company when reaching the stage of explanation and justification in its answer, avers that it was unable to find a purchaser for the remainder of the property within the time limit fixed by the general assembly. This language, construed as it must be most strongly against the pleader, is incapable of any construction other than an express admission that the unsold portion of the pork remained in storage in excess of six months.
The court of common pleas granted an injunction restraining the delivery of the pork to the Packing Company, and restraining the Packing Company from offering any part thereof for sale. It also appointed a receiver to take charge of the property. The defendant companies filed motions to discharge the order of injunction and to remove the receiver. At the hearing of these motions, all of the pleadings were introduced in evidence, together with certain affidavits. The court overruled the motions and.thereafter, issued its order to the receiver to. sell the property without delay. Exceptions were taken by the defendant companies, and error was prosecuted to the court of appeals of Franklin county. Here with slight modification the judgment was affirmed. Proceedings in error were forthwith prosecuted to the supreme court.
*290 The fact of storage in excess of six months haying been established, the question remains, does the admitted conduct of the parties defendant constitute a violation of the Cold Storage Act and the Anti-trust Act, either or both?
If it does not, then what has been done in this instance, however injurious to the public welfare, is beyond any remedy that the judiciary may provide.
The two acts under consideration are in pari materia, both having been enacted for the protection of the public from certain evils of trade and commerce, the cold storage act having for its primary purpose the protection of the public health, while the anti-trust act has to do chiefly with relieving the people from commercial exactions and extortions.
The protection of the public health cannot be said to be the sole purpose of the cold storage act, for clearly the limitation of the time that food commodities may be offered for sale operates automatically to defeat the practice of food hoarding. The purpose must be ascribed to the general assembly of comprehending the' full scope and effect of its enactment. The effect of the cold storage act was to practically make contraband all such food stored longer than six months. Purveyors of food are not supposed to wilfully destroy their most accessible market. In reasonable contemplation then the limitation of the storage period with the penalty imposed, must have been reckoned a most efficient remedy against food hoarding for profiteering purposes..
*291 While there is no express provision in the act making it unlawful to store food for a period longer than six months, there is an unmistakable declaration of public policy that in Ohio pork products ought not to be stored for a period greater than six months, and it, therefore, becomes the manifest duty of the courts to prevent such practices if in their power so to do.
It by not means follows that the cold storage act standing alone, with its secondary purpose so manifest and its public policy so obvious, would not justify the proceedings in the trial court.
However, we are not, in our review, limited to the terms of this act for the inter-related act' against' the creation and carrying out of trade restrictions furnishes adequate means to support the various steps already taken.
The, acts of the parties defendant in respect to the food in question constitute conduct in restriction of trade and have a patent tendency to increase the price of the commodity; and also remove competition in the sale and purchase of merchandise.
It is elementary of course that the withdrawal from the open markets of any considerable quantity of a food commodity necessarily increases in value similar food products then and there exposed for sale. This is especially true of a food so necessary' as pork. We are unwilling to believe that if the food supply' is equal tó the demand, the public cannot make its voice heard in fixing price. Whenever the demand exceeds the supply then a legitimate form of competition exists. Individuals desiring the food become unconscious rivals, and one *292 community without knowing it bids against its neighbor, and often against itself. If this situation is brought about-by a natural shortage of the merchandise sought, there is no remedy and the purchaser must pay the price or do without. The law, however, has placed stern barriers against the creation of any artificial shortage. It forbids an unwholesome market where the buyer is left wholly to the conscience of the dealer.
The certain effect of the conduct of the parties in the case at bar was to create an artificial shortage in pork products. To retain food in storage, and to withhold it from the channels of trade for so long a time that the food, so far as the markets of Ohio are concerned, was, if left in the hands of the owner as effectually destroyed, as if it had been annihilated in a conflagration, is unexplainable, except on the theory of a form of conspiracy to cause similar food products to realize a higher scale of value. This food during the full period of storage was never worth less than $45,000. The most accessible market was Columbus and its immediate vicinity. No legitimate purpose can be ascribed to the owners of the property in knowingly contributing to the destruction of the commercial value of their own product. The necessary conclusion is that the object of the parties was to maintain as to similar products a very satisfactory if not over-profitable market, or, what- is more probable, to cause a still further increase in the selling value thereof.
It is alleged by the Packing Company that on the 9th of July, 1919, 27 days before the statutory *293 time limit of storage had expired as to the very latest storage, it sold 60,000 pounds of the pork to certain Columbus dealers. These sales according to the statement of both buyer and seller were coupled with the privilege of retaining the goods so purchased in the same storage house, and furthermore, this privilege was exercised. Such a sale, so conditioned, especially if the goods were allowed to remain in storage, as they were, is of most doubtful validity. It would be one easy way, if allowed to stand, to defeat the purpose of the law by mere transfer of title. The only other effort to sell, according to the allegations of the answer, was one made in February, 1919. This offer of sale was made to the United States government.
The attempted justification of the Packing Company that the market for such product was congested during the entire period of storage is entirely unavailing under the law.
The claim is stoutly made by the counsel for the defendant companies that an affirmation of the judgment of the court of. appeals would be the ratification of judicial legislation, and that the correction of the evils sought to be remedied by this action should be left .to the general assembly.
We are in complete disagreement with counsel on this phase of the case. We feel that the laws already. enacted are full, ample and complete and furnish the equipment sufficient to cope with the situation presented.
The case at bar is clearly an action in equity and the application of well-recognized principles of equitable jurisdiction is all that is necessary. The *294 mere fact that the steps already taken are without precedent is without persuasive force. Unprecedented conduct necessarily calls for new remedies. The authority to prescribe the remedy is vested in the courts by the grant of equitable powers. Equity to maintain the purpose of its establishment must continue to enlarge its field of action. To be the efficient and justice-seeking handmaiden of the law it was designed to be, it must not be timid, halt or backward, but, rather, progressive.
Many years ago it was most appropriately said by Lord Cottenham in the case of Taylor v. Salmon, 4 Myl. & Cr., 134, 141, that it is the duty of courts of equity (and the same is true of all courts and of all institutions) “to adapt its practice and course of proceeding as far as possible to the existing state of society, and to apply its jurisdiction to all those new cases which, from the progress daily making in the affairs of men, must continually arise, and not, from too strict an adherence to forms and rules established under very different circumstances, decline to administer justice, and to enforce rights for which there is no other remedy.’
At the same time we are convinced that the procedure adopted and orders already made are neither strange or novel. The court found itself under the necessity of enjoining the sale of certain semi-perishable foodstuffs by the owner at a time of a recognized food shortage, the most appalling in all recorded time. The owner appears in court and admits that by reason of his handling of the food in question, he cannot dispose of it in the state where it was produced and made ready for market.
*295 Would it not be trifling with a perilous situation to permit a continued violation of the law by sanctioning a longer storage ?
It would be a monstrous confession of weakness if our courts were, driven to say that they were lacking in power to deal with a situation so acute and dangerous. Publicists, statesmen and professional food conservists are giving their best thought to the consummation of plans that will bridge over the chasm of impending starvation. The courts are not without their share of responsibility. It is their plain duty to enforce the law and to protect the public against any and every species of conduct that has a tendency to exaggerate an already acute situation. This they should do so far as the law reasonably construed and fairly interpreted, together with the exercise of its full equitable power, will permit.
The Packing Company further complains that what has been done and what it is proposed to do with this property is confiscation. We do not think so. It is quite true that the withdrawal from the owner of goods of the privilege of selecting the time, place and manner of selling his property deprives him of valuable insignia of ownership. We feel, however, that in permitting this property to remain in storage for such period of time that in the hands of the owner it is no longer salable here, the Packing Company is estopped by its own conduct in complaining of the procedure had. By the terms of the cold storage act, it has surrendered the right to sell its property. This property was prepared not for the private consumption of the *296 Packing Company and its employes, but to sell to the public.
In connection with the claim of confiscation the charge is made that it is wholly inconsistent to enjoin the owner from selling the food product, and immediately order it to be offered for sale in Ohio by an officer of the court. We think this charge cannot be maintained. The cold storage act, it is to be remembered, did not provide for a forfeiture of the goods so stored beyond the time fixed by law. Neither did it make provision for the destruction thereof. As a preventive and as a penalty, it did provide that the goods so stored should not be sold by the owner. It was a personal penalty to be imposed on the violator of the law. Were it the intention of the general assembly, without reference to the actual physical condition of the meat so stored, to arbitrarily treat it as. tainted and, therefore, unfit for consumption, the law would have provided for its annihilation. It would seem the part of wisdom to provide for the rigid inspection of the pork, and if not unwholesome to have it sold by the receiver, and the proceeds brought into court for its further order.
The State, itself, by the letter of the law is not prohibited from selling the food product so stored, and since in the very nature of things the passage of time pending further disposition of this cause, will cause deterioration in the food value of the pork, it should be speedily placed in the channels of commerce.
By so doing, while visiting the penalty of the law on the owner to the extent of withdrawing from *297 him the right of control, the court is conserving the rights of the owner as well as the public welfare.
We are not inclined to treat lightly the contention of the plaintiffs in error that the orders made deprive them of their property without due process. On the contrary we are impressed that it is by far the most important feature of the case. It deserves and has received our most serious consideration.
What is the situation concerning this contention? The State has averred that the parties have dealt with the property in question in such a manner as has resulted in restraint of trade and a violation of the provisions of the anti-trust law as well as common-law principles touching the subject.
The defendant companies have answered the petition and have set forth their contentions concerning the property itself and with reference to their treatment of and negotiations concerning it.
On the motion of the State for an injunction restraining the transfer of the goods and the appointment of a receiver to hold the same no arbitrary order was made. On the contrary, the parties were all before the court with full opportunity to support the allegations of their pleadings, and offered testimony touching the motions referred to.
As we have heretofore noticed Section 6400, General Code, confers the right to bring suit in the common pleas court and confers the power on the court to grant the writ of injunction to prevent the violation of the statute. The court in the exercise of this jurisdiction had full equity powers and if it deemed proper, after it had granted such in *298 junction, it had the right to appoint a receiver to control the property pending the ultimate conclusion of the case. Moreover, in the exercise of its plenary equity powers, if the court deemed it for the best interests of all concerned, considering the nature of the goods and all the circumstances, that the property with which it was dealing should be sold by its receiver, it had the power to order the same sold and the proceeds brought into court to await its final order. Everything that was done was done with all the parties in court and before the court with full opportunity to be heard.
The case was presented to the court that the defendant companies had dealt with the pork in a manner prohibited by law. Their admitted conduct was such as to justify a court of equity in finding that their purpose was to hold it beyond the period allowed by law and for the purposes which the law prohibits.
There was not only no denial of due process of law, but there was the fullest opportunity for defendants in the court below to show that the allegations of the petition were not true.
Stripped of all irrelevant features there is nothing, unusual about the case. The defendant companies are still entitled to have the case set down for further hearing, although on the pleadings as they now stand judgment would have to be entered for plaintiff below. The defendant storage company may still assert its storage lien as against the proceeds of sale and the Packing Company may assert its full right to the proceeds of sale after payment of costs and the lien aforesaid.
*299 It is further urged that there is a conflict between the federal and state laws applying to this case. When congress and the general assembly have concurrent jurisdiction, it is well understood that the state may legislate until such time as congress acts. When the power of congress is exercised that of the State is superseded, but it is equally well settled that when power was conferred upon congress to regulate commerce between the states, it was not intended to deprive the states from the exercise of their police power in prescribing legislation relating to the health, morals, safety and welfare of the citizens, although such regulations might indirectly affect the commerce of the nation.
The state statute fixes the maximum storage period at six months. But it must be noted that the question under consideration is whether the conduct of the parties in this case is such as to demonstrate that the purpose of the parties in withholding the commodity from the market was to accomplish the purposes or any of them which are prohibited by the Anti-trust Law of Ohio. As has been heretofore said in the course of this opinion, the Cold Storage Act merely prescribes a certain course of conduct to be complied with, and the violation of its provisions furnishes the convincing evidence of the illegal purposes to which reference has been made.
No evidence was offered at the hearing of the motions in the case which tended to prove that the owner of these goods had contracted or had any intention of contracting or disposing of them in interstate commerce, nor was there any evidence *300 tendered at the time of hearing that the goods were being held pursuant to any order of the Federal Food Administration Board or any other federal agency or pursuant to or subject to any federal law.
The claim is advanced by the State that the things done and orders made in the court of common pleas do not constitute a judgment under the constitution, on which proceedings in error might be predicated. We are of the opinion that the authority of Thompson et al. v. Denton, 95 Ohio St., 333, settles this claim adversely to the State.
The judgment of the court of appeals is affirmed.

Judgment affirmed.

Matthias, Johnson, Donahue and Wanamaker, JJ., concur.